## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANICE LOPEZ, | CASE NO. 1:15-cv-01139-SHR-GBC |
| Plaintiff, | (JUDGE RAMBO) |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL |
| | Docs. 1, 8, 9, 11, 13, 14 |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.    Procedural Background

On April 2, 2012, Janice Lopez ("Plaintiff") filed as a claimant for disability benefits under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1181-1183f, with a last insured date of December 31, 2015,[1] and claimed a disability onset date of March 28, 2012.  (Administrative Transcript (hereinafter, "Tr."), 10, 12).

After the claim was denied at the initial level of administrative review, the

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. 42 U.S.C. §§ 415(a) and 416(i)(1). The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." *See* 42 U.S.C. § 416(i)(2); *accord Renfer v. Colvin*, No. 3:14CV611, 2015 WL 2344959, at *1 (M.D. Pa. May 14, 2015).

Administrative Law Judge (ALJ) held hearings on August 27 2013, and December 31, 2013. (Tr. 28-75). On January 3, 2014, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (Tr. 7-24). Plaintiff sought review of the unfavorable decision, which the Appeals Council denied on April 6, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6).

On June 9, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration ("SSA") denying social security benefits. (Doc. 1). On August 21, 2015, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings. (Doc. 8, 9). On September 10, 2015, the Court referred this case to the undersigned Magistrate Judge. On October 5, 2015, Plaintiff filed a brief in support of the appeal. (Doc. 11) ("Pl. Brief")). On November 6, 2015, Defendant filed a brief in response. (Doc. 13 ("Def. Brief")). On November 16, 2015, Plaintiff filed a reply brief. (Tr. 14 ("Reply")).

## II.    Relevant Facts in the Record
### A. Education, Age, and Vocational History

Plaintiff was born in October 1959 and was 54-years-old and classified by the Regulations as an individual closely approaching advanced age at the time of the ALJ decision. (Tr. 18); 20 C.F.R. § 404.1563(d). The highest level of

education that Plaintiff completed was high school.  (Tr. 33).  Plaintiff's past relevant work was as a waiter/waitress (Dictionary of Occupational Titles (DICOT) code 311.477-030), a store laborer (DICOT code 922.687-030), a material handler (DICOT code 929.687-030), and as a receiving checker (DICOT code 222.687-018).  (Tr. 18).  Plaintiff asserts that she is disabled due to low back pain.  (Tr. 12); Pl. Brief at 3-8.  Earnings reports demonstrate that from 1987 to 2008 and 2010 to 2011, Plaintiff consistently earned four quarters of coverage annually.[2]  (Tr. 214-220).

### B. Relevant Treatment History and Medical Opinions

### 1.    Advanced Paincare: Jean L. Santo, M.D.

Imaging records of the spine dated February 1, 2012, noted that Plaintiff had "multilevel mid to lower lumber spine degenerative disc disease" and "bilateral mid to lower spine facet joint arthropathy."  (Tr. 355).

On February 27, 2012, Plaintiff reported experiencing lower back pain that radiated to through her left leg and foot, paresthesias and coldness in the left extremity, and neck pain with numbness in both arms which she manages with over the counter pain medication.  (Tr. 336).  Plaintiff reported experiences a level of pain of 3 on a scale where 10 is the highest.  (Tr. 336).  Plaintiff reported that

---

[2] Quarter of coverage represents a minimum amount of taxable based on a statutory formula that reflects a national average wages.  *See Weidman v. Colvin*, No. CV 3:14-552, 2015 WL 5829788, at *11 n.4 (M.D. Pa. Sept. 30, 2015).

the pain increased with more time on her feet.  (Tr. 336).  Dr. Santos noted that an X-ray of her spine showed degenerative disc disease and facet disease.  (Tr. 336).  Dr. Santos administered lumbar epidural steroid injections (LESI).  (Tr. 336).

On March 28, 2012, Plaintiff reported back and limb pain.  (Tr. 328).  Plaintiff reported that although she had experienced significant pain relief from previous LESI, her pain had returned.  (Tr. 329).  Plaintiff reported that the pain was the worse it has ever been, that she had trouble with walking and standing, and that both legs went numb sometimes.  (Tr. 329).  Plaintiff was scheduled to have an MRI, which Dr. Santo wanted to review before performing another LESI.  (Tr. 329).  Plaintiff reported that she was missing work and was afraid that she would be terminated.  (Tr. 329).  Dr. Santo noted that Plaintiff "failed to respond to ESI with long-term improvement" and that she "did not tolerate gabapentin."  (Tr. 329).

### 2.    Pinnacle Health: Andrew Eckert, D.O.

On January 23, 2012, Plaintiff reported an onset of her back pain of a week prior, that her pain was aggravated by bending and walking and that nothing alleviates the pain.  (Tr. 321).  Upon examination, Dr. Eckert observed that there was paraspinal tenderness, active painful range of motion with pain as a limiting factor, lateral right and left flexion of 35 degrees, extension of 35 degrees, flexion of 80 degrees, and full rotation without pain.  (Tr. 322).  Dr. Eckert opined that

Plaintiff had no restriction for flexion, extension, and lateral bending.  (Tr. 322).

Dr. Eckert also observed that Plaintiff's muscle tone was normal, there was no

spasm, motor tests were negative, and no pain with hip motion.  (Tr. 322).  Dr.

Eckert assessed Plaintiff with a "flare of chronic problem" and prescribed pain

medication.  (Tr. 322).

On March 28, 2012, Plaintiff reported experiencing worse lower back pain.

(Tr. 317).  Plaintiff reported persistent pain in her lower back and gluteal area, pain

in her left ankle and thigh, and weakness and numbness in her extremities.  (Tr.

317).  Plaintiff also reported that her symptoms were aggravated by extension,

flexion and walking, but the pain was relieved by medication and physical therapy.

(Tr. 317).  Upon examination Dr. Eckert made no observations about any physical

limitations, simply describing her as "well developed."  (Tr. 317).  He prescribed

hydrocodone-acetaminophen for pain and referred her to an orthopedist.  (Tr. 318).

Plaintiff underwent an MRI on March 30, 2012.  (Tr. 352).  The

MRI revealed normal alignment of the lumbar vertebral elements and no

compression abnormalities or spondylolisthesis.  (Tr. 352).  There was disc

desiccation at L3-L4, L4-L5, and L5-S1 levels, with mild disc space narrowing at

L4-L5 and moderate to severe narrowing at L5-S1.  (Tr. 352).  Overall impression

as that there were "degenerative changes predominantly in the inferior lumbar

spine, most significant at the L4-L5 level where there is mild central canal

narrowing and moderate narrowing of the right neural foramen and at the L5-S1 level where there is severe narrowing of the left neural foramen likely causing impingement of the exiting L5 nerve root." (Tr. 352).

### 3.   Orthopedic Institute of Pennsylvania: Kathryn Mueller, PA-C

On June 1, 2012, Ms. Mueller noted that Plaintiff "has had problems with pain in her low back area with stenosis on the left side at L5-S1." (Tr. 364).  Ms. Mueller observed pain flexion of her lumbar spine.  (Tr. 364).  Ms. Mueller also observed no acute distress and no localizing radicular findings in her lower legs. (Tr. 364).   Ms. Mueller diagnosed Plaintiff with symptomatic stenosis of the lumbar spine and recommended therapy, over-the-counter medication, and a follow-up appointment in four weeks.  (Tr. 364).  There is no record evidence of a follow-up appointment or physical therapy.

### 4.   State Agency Expert Physical RFC Opinion:  Harold Ramsey, M.D.

On September 18, 2012, Dr. Ramsey concluded that Plaintiff had some exertional limitations, but could occasionally lift and/or carry up to twenty pounds; could frequently lift and/or carry up to ten pounds; could stand and/or walk for six hours in an eight-hour workday; could sit (with normal breaks) for a total of six hours in an eight-hour workday; and had no push or pull limitations.  (Tr. 366). Dr. Ramsey also concluded that Plaintiff had occasional postural limitations for

balancing, stooping, kneeling, and crouching, as well as for climbing ramps and stairs, and that she should never climb stairs, ladders, ropes or scaffolds.  (Tr. 367).

Dr. Ramsey noted records were Plaintiff reported that she could "do personal care, cook, housework, drive, shop . . . [and] walk 1/2 mile before needing to stop and rest."  (Tr. 376).  Dr. Ramsey noted records were Plaintiff reported that she had "some difficulty with lifting, bending, standing, walking, reaching, stair climbing sitting."  (Tr. 376).  Dr. Ramsey noted a March 2012 record from Dr. Ecker observing an antalgic gait and pain free range of motion; a March 2012 MRI demonstrating degenerative changes in the inferior lumbar spine and likely impingement at L5 nerve root; and, a June 2012 record noting lumbar spine pain upon flexion and no radicular findings for the lower legs.  (Tr. 376).  Dr. Ramsey opined that Plaintiff's statements about her difficulties with sitting were "out of proportion to the objective physical findings" and with her activities of daily living, such as walking for a half mile before needing to rest.  (Tr. 376).  Dr. Ramsey concluded that Plaintiff's impairments of degenerative joint disease of lumbar spine were severe but did not meet the listings.  (Tr. 376).

### 5.    Consultative Examiner Opinion: Christine Daecher, D.O.

On September 25, 2013, Plaintiff reported myalgia, swelling, muscle weakness and low back pain.  (Tr. 394).  Dr. Daecher observed that Plaintiff had a positive bilateral straight leg test with tenderness at the left lumbar region of the

spine, decreased flexion, and tendon reflexes of the patella and Achilles were abnormal. (Tr. 397). Dr. Daecher noted that Plaintiff had "a long history of low back pain and has had significant treatments including epidural injections with pain doctor." (Tr. 398). On examination there was "decreased difficult spine flexion and extension, and positive straight leg testing, changes in her posture due to lumbar pathology and obesity." (Tr. 398). Dr. Daecher noted that "[r]adiologic studies provided show moderate to severe disc disease at L3-L4, L4-L5, and L5-S1 with complete desiccation of the discs. (Tr. 398). Dr. Daecher noted that there was "degeneration at all levels to some degree but less severe than the state levels above" and that there was also "facet joint arthritis." (Tr. 398).

Dr. Daecher noted that Plaintiff had findings consistent with COPD, however, she is not on any medications and does not mention any difficulties related to COPD. (Tr. 392). She denied restless leg syndrome, coughing, wheezing, and excessive sputum. (Tr. 394).

Dr. Daecher opined that Plaintiff could: 1) rarely lift and carry up to twenty pounds; 2) sit for thirty minutes at one time, and; 3) stand or walk for twenty minutes at one time. (Tr. 382-83). Dr. Daecher opined that, during an eight-hour workday, Plaintiff could sit for two to four hours, stand for ninety minutes, and walk for ninety minutes. (Tr. 383). Plaintiff did not need a cane to ambulate. (Tr. 383). Plaintiff could occasionally stoop and climb stairs and ramps, but she should

never balance, kneel, crouch, crawl, or climb ladders or scaffolds.  (Tr. 385).

Plaintiff had no visual or hearing limitations.  (Tr. 385).  Dr. Daecher opined that

Plaintiff should never be exposed to unprotected heights, moving or mechanical

parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, or extreme heat

or cold.  (Tr. 386).  Plaintiff could occasionally be exposed to vibrations and

operate a motor vehicle, and she could tolerate moderate and loud noise.  (Tr. 386).

Dr. Daecher opined that Plaintiff had "very limited" abilities to shop, but could

travel on her own, ambulate without any assistance, walk a block at a reasonable

pace on an uneven surface, use public transportation, climb a few steps, prepare

meals, take care of her hygiene, and sort, handle and use paper files.  (Tr. 387).

Upon examination Dr. Daecher observed that Plaintiff had: 1) bilateral cervical

flexion of 20 degrees out of 40 degrees; 2) lumbar flexion-extension of 70 degrees

out of 90 degrees; 3) full range of motion for the wrist, knee and shoulder except

30 degrees left shoulder internal rotation out of 40 degrees.  (Tr. 389-91).

### III.   Legal Standards and Plaintiff's Alleged Errors

To receive benefits under the Act, a claimant must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520.  Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d

1058, 1064 (3d Cir. 1993).  The ultimate burden of proving disability under the Act

lies with the claimant.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

With due deference to the Commissioner's construction of social security

rulings and regulations, the court may reverse the Commissioner's final

determination if the ALJ did not properly apply the legal standards.  *See* 42 U.S.C.

§ 405(g) ("court shall review only the question of conformity with such regulations

and the validity of such regulations"); *Christopher v. SmithKline Beecham Corp.*,

132 S. Ct. 2156, 2166-67 (2012) (deference to agency interpretation of its own

regulations); *Sanfilippo v. Barnhart*, 325 F.3d 391, 393 (3d Cir. 2003) (plenary

review of legal questions in social security cases); *see also Witkowski v. Colvin*,

999 F. Supp. 2d 764, 772-73 (M.D. Pa. 2014) (citing *Poulos v. Commissioner of*

*Social Security*, 474 F.3d 88, 91 (3d Cir. 2007)).  The court may also reverse the

Commissioner when substantial evidence does not support the ALJ's decision.  *See*

42 U.S.C. § 405(g); *see also Johnson v. Commissioner of Social Sec.*, 529 F.3d

198, 200 (3d Cir. 2008); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d

Cir.1986).  Substantial evidence is a deferential standard of review. *See Jones v.*

*Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Pierce v.*

*Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### A. Step Three Non-Severe Impairments

Plaintiff argues that the ALJ erred in finding her COPD and Restless leg Syndrome were not severe impairments. Pl. Brief at 10-13.

At step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is severe only if it significantly limits the claimant's physical or mental ability to do "basic work activities," *i.e.*, physical abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b).

A "severe" impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of the claimant's age, education, or work

experience.  *See Bowen*, 482 U.S. at 149-51.  The claimant has the burden of showing that an impairment is severe.  *Bowen*, 482 U.S. at 146 n. 5.  Moreover, objective medical diagnoses alone are insufficient to establish severity at step two; a claimant must also present evidence that these limitations significantly limited his or her ability to do basic work activities or impaired his or her capacity to cope with the mental demands of working.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1521(a), 416.921(a); *see also Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144-45 (3d Cir. 2007).

If a claimant has any severe impairment, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g), 416.920(d)-(g).  A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two and all impairments are considered at step four when setting the residual functional capacity.  *See* 20 C.F.R. §§ 404.1523, 416.923 and 404.1545(a)(2), § 416.945(a)(2); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005); *Shannon v. Astrue*, No. 4:11-CV-00289, 2012 WL 1205816, at *10-11 (M.D. Pa. Apr. 11, 2012); *Bell v. Colvin*, No. 3:12-CV-00634, 2013 WL 6835408, at *8 (M.D. Pa. Dec. 23, 2013).

Ultimately, the outcome of the case depends on the demonstration of the functional limitations of the impairment.  *See Alexander v. Shalala*, 927 F. Supp. 785, 792 (D. N.J. 1995) *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d

611 (3d Cir. 1996); *accord*, *Walker v. Barnhart*, 172 F. App'x 423, 426 (3d Cir. 2006).   Where the ALJ finds that Plaintiff suffers from a severe impairment, any failure on the ALJ's part to identify other conditions as severe or precisely name the severe impairment does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations.   *See e.g.*, *Lambert v. Astrue*, No. Civ. A. 08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009); *Alexander v. Shalala*, 927 F. Supp. 785, 792 (D. N.J. 1995) *aff'd sub nom. Alexander v. Comm'r of Soc. Sec.*, 85 F.3d 611 (3d Cir. 1996); *Faircloth v. Colvin*, No. Civ.A.12–1824, 2013 WL 3354546, at *11 (W.D.Pa.2013), *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("[T]he ALJ considered any limitations posed by the [impairment] at Step 4 . . . any error that the ALJ made in failing to include the [impairment] at Step 2 was harmless").

With regards to the alleged COPD and Restless Leg Syndrome, Plaintiff denied restless leg syndrome, coughing, wheezing, and excessive sputum.   (Tr. 394).   The ALJ explained that Plaintiff was not taking any medication to treat

COPD.  (Tr. 13).  The ALJ also noted where in the record Plaintiff demonstrated full strength on the lower extremities.  (Tr. 17).

Substantial evidence supports the ALJ's determination that COPD and Restless Leg Syndrome were not severe impairments.  Nevertheless, even if the ALJ erred such finding is harmless given the totality of the objective evidence cited by the ALJ in support of the ultimate conclusion regarding Plaintiff's limitations.

## B. Listing 1.04A

Plaintiff argues that the ALJ erred in concluding that Plaintiff's impairments did not meet the requirements of Listings 1.04A.  Pl. Brief at 19.  A claimant must establish each element of a Listing to meet a Listing.  20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies *all of the criteria in the listing*.") (emphasis added). As the Third Circuit has explained:

> For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 110 S.Ct. at 891 (emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

*Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). Thus, if there is one element that is not satisfied, the ALJ will have substantial evidence to conclude that a claimant does not meet a Listing. *See Williams v. Sullivan*, 970 F.2d 1178, 1186.

Listing 1.04 requires:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The ALJ correctly observed that there was no evidence of motor loss.  (Tr. 13).  In a record dated January 23, 2012, Dr. Eckert also observed that Plaintiff's muscle tone was normal, there was no spasm and motor tests were negative.  (Tr. 322).

Given that not all of the elements of Listing 1.04 have been satisfied, substantial evidence supports the ALJ's determination that Plaintiff does not meet the Listing.  *See Williams v. Sullivan*, 970 F.2d 1178, 1186.

///

///

## A. Plaintiff's Credibility

Plaintiff asserts that the ALJ erred in finding Plaintiff lacked credibility.  Pl. Brief at 2, 11-16.

Where a medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a credibility finding on the claimant's subjective statements. SSR 96-7p.  An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony.  Social Security Ruling ("SSR")[3] 96-7p; *Schaudeck v. Comm'r of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999).  The credibility finding must be based on a consideration of the entire case record.  SSR 96-7p.  Evidence can be used to discount credibility if such evidence demonstrates a contradiction or inconsistency. *See e.g. Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188 (3d Cir. 2007) (finding significant a plaintiff's testimony about her daily activities was internally inconsistent, thus supporting the ALJ's determination of according her testimony little weight); *Smith v. Astrue*, 359 F. App'x 313, 317 (3d Cir. 2009) (claimant's testimony that she was essentially bedridden contradicted by evidence that she had

---

[3] Although SSA rulings do not have the force and effect of a statute or regulation, they are binding on all components of the SSA in accordance with section 402.35(b)(1) of the SSA Regulations (20 C.F.R. § 402), and are to be relied upon as precedents in adjudicating other cases.

been primary caretaker for small child for two years); *see also Orn v. Astrue*, 495 F.3d 625, 636 (stating that inconsistencies in testimony or between testimony and other evidence is proper reason to discredit a social security plaintiff); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (ALJ erred in making adverse credibility inferences from uncontradicted evidence).

The ALJ noted records indicating that Plaintiff was not taking any medication relative to her breathing and she did not mention any associated difficulties with COPD. (Tr. 13-16). Plaintiff discussed Plaintiff's testimony regarding Plaintiff's symptoms. (Tr. 13-16). The ALJ acknowledged Plaintiff's testimony regarding gaps in her medical treatment due to a lack of health insurance and testimony that she takes over the counter pain medication six times per day. (Tr. 15). The ALJ noted records where Plaintiff's reported that her symptoms improved, that she ambulated with a normal gait, and did not exhibit instability or muscle spasms. (Tr. 15). The ALJ noted records indicating that Plaintiff's straight leg raise testing was negative bilaterally and that Plaintiff had 5/5 muscle strength in her lower extremities. (Tr. 15). The ALJ noted records where Plaintiff complained of worsening low back pain radiating into her left lower extremities and that her symptoms were aggravated by extension, flexion, sitting and walking. (Tr. 14-15). The ALJ noted that "[h]owever . . . [Plaintiff's] symptoms are relieved with pain medication and physical therapy." (Tr. 15). The ALJ noted that

in June 2012, physician assistant, Ms. Mueller examined Plaintiff and noted pain with flexion and that she had no localizing radicular symptoms in her lower extremities.  (Tr. 15-16).  The ALJ noted that Ms. Mueller recommended physical therapy and over the counter non-steroidal medication.  (Tr. 16).

The ALJ summarized the observations of the March 2012 examination from Dr. Daecher which included Plaintiff's report of radiating pain to her lower extremities with associated weakness and observations that Plaintiff ambulates without an assistive device, positive straight leg raising, bilaterally and decreased flexion. (Tr. 16).  The ALJ also noted that Dr. Daecher observed had full range of motion with lateral bending and rotation, muscle tone and fine motor movements were normal, her deep tendon reflexes were intact and she exhibited no unsteadiness when she walked.  (Tr. 16).  While acknowledging that Plaintiff stated that the gaps in treatment were due to a lack of health insurance, the ALJ noted that when Plaintiff did seek treatment relative to her impairments, the treatment had been routine and conservative in nature.  (Tr. 17).  Substantial evidence supports this finding given the records noting observations of Plaintiff's ambulation, gait, and range of motion as well as the recommended treatment and Plaintiff's testimony regarding not currently receiving medical treatment relative to her alleged impairments and her stating that she was not bothered by pain when she is walking. (Tr. 14-17).

The ALJ extensively discussed the material evidence throughout her decision and although all of the relevant evidence was not repeated in a specific credibility section, such is not required. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis"); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 n. 7 (3d Cir. 2004); *Maxwell v. Colvin*, 1:13-CV-2410, 2015 WL 3409055, at *6-7 (M.D. Pa. May 27, 2015).

Based on the foregoing, substantial evidence supports the ALJ's credibility determination. *See* SSR 96-7p; 20 C.F.R. §§ 404.1529, 416.929.

### C. Weight Accorded to Medical Opinions

Plaintiff argues that the ALJ failed to accord sufficient weight to the opinion of the consulting physician, Dr. Daecher. Pl. Brief at 13-19. Plaintiff also argues that the ALJ accorded too much weight to the September 2012 non-examining opinion of Dr. Ramsey. Pl. Brief at 18.

For weighing all medical opinions, the Commissioner considers the factors enumerated in 20 C.F.R. §§ 404.1527(c), 416.927(c). Pursuant to subsection (c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." Pursuant to subsection (c)(4),

"the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."   Pursuant to subsection (c)(5), more weight may be assigned to specialists, and subsection (c)(6) allows consideration of other factors which "tend to support or contradict the opinion."   20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial evidence supports the ALJ's reliance on the September 2012 opinion of Dr. Ramsey and according less weight to Dr. Daecher's September 2013 assessment.   When a physician's opinion is based on subjective, rather than objective, information, and the ALJ has properly found a claimant's subjective claims to be less than fully credible, an ALJ may assign less weight to the opinion:

> [T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion. An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) ("The ALJ thus disregarded Dr. Bliss' opinion because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.").

*Morris v. Barnhart*, 78 Fed. Appx. 820, 824-25 (3d Cir. 2003) (some internal citations omitted).

In this instance, the ALJ explained that Plaintiff was not "entirely credible regarding the extent and severity of her impairments and limitations" and explained that Plaintiff's allegations were "not entirely consistent with the

objective findings, in that the treatment received by [Plaintiff] relative to her impairments has been routine and conservative in nature." (Tr. 17). The ALJ's consideration of Plaintiff's conservative treating is a proper ground for finding Plaintiff's allegations less credible. *See* Social Security Ruling ("SSR") 96-7p ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . and there are no good reasons for this failure)."

For the weight allocated to Dr. Daecher's assessment, the ALJ explained that the opinion was "based upon [Plaintiff's] no more than partially credible allegations." (Tr. 16). Implicit in the ALJ's reasoning for citing the one-time visit is that such is not of a significant duration to form a reliable basis for Dr. Daecher to heavily rely on Plaintiff's subjective reports. The ALJ listed other reasons throughout the opinion. The ALJ observed that:

> The record indicates that [Plaintiff's] medical treatment has been limited to sporadic follow up with her primary care physician. The record also indicates that [Plaintiff] stopped treating with Dr. Santo, a pain management specialist, in March 2012. [Plaintiff] only attended one examination at Orthopedic Institute of Pennsylvania. [Plaintiff] testified that she is not currently receiving medical treatment relative to her alleged impairments. Further, [Plaintiff's] subjective allegations are not supported by the objective findings noted throughout the evidence of record. . . . [Plaintiff] also alleged that her legs are weak, giving out and causing her to fall five times. However, the record indicates that [Plaintiff] has 5/5 muscle strength in her lower extremities. [Plaintiff] alleged that she is only able to stand for 15 minutes due to pain and weakness in her legs. However, the claimant testified that she is not bothered by pain when she is walking.

> [Plaintiff] participates in various activities of daily living . . . . She also reported that she regularly goes shopping for groceries. . . . [Plaintiff] testified that she goes for walks.

(Tr. 17) (internal citations omitted).  Based on the foregoing, substantial evidence supports the ALJ's allocation of greater weight to Dr. Ramsey's opinion over Dr. Daecher's opinion.

### D. Residual Functional Capacity

Plaintiff argues that the ALJ's RFC was incomplete because he failed to make any findings as to Plaintiff's limitation in standing, walking and sitting.  Pl. Brief at 24.  The ALJ determined that Plaintiff:

> [h]as the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  [Plaintiff] is required to take normal breaks throughout the workday, including a 15 minute morning break, a 30 minute lunch break and a 15 minute afternoon break.  . . . [Plaintiff] is capable of occasionally climbing ramps and stairs and she is prohibited from climbing ladders, ropes, scaffolds and poles. [Plaintiff] is capable of occasionally stooping, kneeling, crouching and squatting.  [Plaintiff] is prohibited from crawling. [Plaintiff] is capable of occasionally reaching overhead with her upper extremities. . . . .

(Tr. 14).

It is permissible for the ALJ to reject all opinions from non-treating physicians to independently formulate the RFC based on the medical and non-medical evidence in totality.  *See* 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1545(a), 416.945(a); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir.

2006).    According to sections 404.1527(d)(2) and 416.927(d)(2), the final responsibility for deciding a claimant's residual functional capacity is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527, 416.927(d)(2).

As discussed above substantial evidence supports the ALJ's credibility determination and conclusion that Plaintiff did not meet the Listing criteria.  The ALJ considered the evidence in totality and adequately explained the reasoning for the allocation of weight to the medical opinions.  The ALJ noted that Dr. Daecher stated that Plaintiff ambulated without an assistive device.  (Tr. 16 (ALJ decision), 387 (Dr. Daecher's report)).  The ALJ gave considerable weight to the opinion of Dr. Ramsey who opined that Plaintiff could stand and/or walk for six hours in an eight-hour workday and could sit (with normal breaks) for a total of six hours in an eight-hour workday (Tr. 16, 366), and it was reasonable for the ALJ to rely on this opinion in formulating the RFC.  Based on the foregoing, substantial evidence supports the ALJ's RFC, including the ALJ's finding of light work without walking, sitting, and standing limitations.

## IV.    Recommendation

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552;

*Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate.

Accordingly, it is HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The

briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: August 3, 2016                         s/Gerald B. Cohn

GERALD B. COHN

UNITED STATES MAGISTRATE JUDGE